I'm Beverly Martin and I'd like to welcome you to the argument today. We've been lamenting all week that we're not together in Jacksonville, but we appreciate you being with us in this way. We've had a little bit of an adventure this morning. We lost telephone contact with Ms. Tallman, so it's been exciting, but we think we're going to all be together for this argument. I want counsel to know that, or to remember that we've promised the first two minutes of your argument uninterrupted, and Ms. Geddes is kind enough to help us keep track of the time. She is going to let you know when you are two minutes away from the end of your allotted time, and then she will announce when your time has expired. So with that, and my apologies for us being a couple of minutes late, we'll get underway with the argument. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. Everything is just a little messy this morning. I apologize. So it's United States v. Deangelo Johnson. Forgive me. Not a problem, Your Honor. May it please the court. Good afternoon, Your Honors and counsel. Adil Bashir on behalf of Deangelo Johnson. Beginning first with the Raheith error, there are two main reasons why the government's failure to charge and prove that Mr. Johnson knew his 2010 Florida prior qualified as a misdemeanor crime of domestic violence as defined in Section 921 and by the Supreme Court violated his substantial rights. First is the lack of evidence that Mr. Johnson knew his prior offense qualified as a misdemeanor crime of domestic violence as a matter of law under the categorical approach. Second, is the affirmative evidence undermining any inference that Mr. Johnson knew his prior fell within this special class of offenses known as misdemeanor crime of domestic violence defined under federal law. The combination of these two factors shows that Mr. Johnson not only lacked knowledge of its status, but shows prejudice and undermines confidence in the conviction warranting a reversal. So turning first to the lack of evidence, the most critical point I want to emphasize here is that when we're talking about knowing one's status under 922 G9, there's a distinction about knowing the facts of a prior offense and knowing that a conviction qualifies as a misdemeanor crime of domestic violence, and the latter of which involves a legal question requiring application of the categorical approach. And so we know from Rahif, and this is very critical, when in a status such as misdemeanor crime of domestic violence involves a legal matter, the government has to prove the defendant knew that law. So here, I think suffice to say this, the simplest explanation is there's simply no evidence, for example, Mr. Johnson knew the elements of his 2010 offense categorically met the Supreme Court's definition of physical force under the misdemeanor crime of domestic element clause. And that really is the heart of the dispute between my friend on the other side, because the government would like to reduce this to a factual question about whether Mr. Johnson knew the facts of his prior offense, the existence of it and its conduct, but we know that's not even how we determine what qualifies as a misdemeanor crime of domestic violence. We use the categorical approach. So knowing the facts of your offense simply cannot be enough to infer that you knew that your prior offense fell within this category and thus that you knew you belonged to 922 G9, you fell within the category of prohibited persons with this qualifying offense. Go ahead. Yes, Your Honor. I'm sorry, Judge Talman, did you have a question? Go ahead. I'll follow you. Okay. Thank you. I was wondering what is your best case for that? Because it seems to me that the precedent indicates that the defendant needed to know the facts, but not the law. And I'm wondering what you're relying on for the notion that he has to know the actual law. Well, the best case for that is right straight from Rahif itself. And I would point the court to the discussion about knowledge of the law and the discussion about Liparota in particular, because this issue was squarely before the court in Rahif when it came to 922 G5 as a matter. And the question there was whether Mr. Rahif had to know he was in the country illegally or unlawfully. And the government raised essentially the exact same argument that all that needed to be proven was that Mr. Rahif needed to know the facts and not the question of law. But the court was quite clear that when Congress defines a status or an element of the offense using a legal component, just as they did in Liparota, the government has to prove that knowledge of the law. And the reason that that makes perfect sense and why it should be extended here is because it aligns exactly with the concept of Rahif and this underlying basis of fair notice and distinguishing between the critical element that makes one's conduct illegal and otherwise innocent conduct. Because if someone just knows that they've committed an offense or knows that they've in the past had a conviction but does not know that that qualifies as a misdemeanor crime of domestic violence, that person lacks the guilty knowledge and the guilty conscience to be I have a simple analogy I'd like to offer that could really illustrate this point that I think all the parties will be familiar with. If we just imagined 922G as prohibiting a person who's committed of a crime of violence from possessing a firearm, I think it would be quite clear it simply wouldn't be enough that someone knew they committed robbery or resisting of violence or one of these other offenses that falls within the elements clause. What you would actually have to know is that that offense qualifies as a crime of violence, which is that legal component. So this is straight from Rahif. It was squarely before the court Rahif. It was rather one of the more interesting aspects of Rahif reaffirming this. And I believe even the dissents pointed out the complexity to this, but it's consistent with not only Rahif Liparota, the court McFadden, all of these cases put together make it quite clear that the 922G statuses that include these legal components, it required the government to prove the defendant had this intended knowledge of the law or at least knew that their offense qualified, not just that they've committed the offense, but that misdemeanor crime of domestic violence. And, and this really, when we're looking at this particular case, and understanding the standard review, this dovetails perfectly into the second point that I wanted to make, which, again, I want to be 100% clear what we're arguing is that a person has to know their status and not that they're a prohibited person. But cases like Rahif and cases from this court, like the Reid decision, often note that when a person knows they're a prohibited person, that they can't possess a firearm, you can infer from that that they know their status. So what's really significant about this case is that we have the this is an unusual case, and that it isn't often individuals end up before this court charged with something they can genuinely say they did not know is unlawful. And the court varied down on the basis of that fact. And the reason that I'm emphasizing this is because we're talking about a reasonable probability of a different result and prejudice under the standard review. This is, quite frankly, an uncommon for the court to recognize and none of the parties to dispute, I don't believe the government disputed it below or is disputing it now, that the record is quite clear, Mr. Johnson did not know he was he was even a prohibited person. So when you take that into account, counsel, Judge Toland, I appreciate the the needle that you're trying to thread here. And this is really hard stuff under under But as I understand the argument, or at least the import of the Supreme Court's decision, he doesn't need to know that as a convict, a person convicted of domestic violence, even though it's a misdemeanor, under federal law, he's prohibited from possessing firearms. Is that right? Yes, that's correct. What he needs to know is his status that his he falls within 922 g nine, that his conviction qualifies as a misdemeanor crime of domestic violence. Okay, and this is to which to which he pled guilty in 2010. After he was arrested for domestic violence, and and maybe this was not in the his wife. And the case was pled down to misdemeanor domestic violence or misdemeanor. Yeah, I guess it was misdemeanor domestic battery. Am I right? Yes, yes, your honor. That's correct. And that actually and then he got he got probation, but then he violated his probation and ended up serving six months more in the county jail. So if that's, if that's all the information that's going to be presented, if we remanded, aren't we going to be right back where we are now? I guess I'm having a hard time seeing how he's prejudiced. Well, I would think if we have that information on a remand, he would actually be entitled to a judgment of acquittal is is our strongest position at a minimum, the government I'm sure pled down to misdemeanor domestic violence. I mean, what more does he need to know at that point? Because I guess there actually was a physical assault on the wife. And I don't know if he pulled a knife on her or something. But I guess what I'm trying to understand in your argument is what more does the government need to show other than the circumstances to which he pled guilty? Well, Judge Talbot, I think I understand the concern. And I would point again back to Rahif because here, this issue was also put forward, the government again made the same argument that it would be very difficult to prove knowledge of status, especially when it includes a legal component. And the Rahif court made it quite clear, we prove knowledge the same way, as we do all the time by using circumstantial evidence. So the inference in most cases, including G9, will be someone knows that they are a prohibited person. And I know that sounds like we're conflating two things, but it's really just the inference. Thank you. To your point about what more would need to be proved, as complex as all of this sounds, Rahif really was a straightforward statutory text decision about Syantar. What the government needs to prove is that he knew the exact status that, pre-Rahif, all the government needed to prove was that the offense qualified as a misdemeanor crime of domestic violence. So now the government needs to put forward facts that he knows that. And there's a couple of different ways of thinking about this argument. In our practice, we know that they can do this. And otherwise, advice given by counsel or the state court that puts someone on notice, because that's the important aspect of this. If it was just a factual question, that's all the government would have to prove to convict someone of a misdemeanor crime of domestic violence. But we have multiple Supreme Court cases, from Castleman to Voisin, cases from this court in Vail-by-Lawn and et cetera, the Hayes decision, that tell us this is a categorical question. It's defined by the elements of the offense. So it really just spills down to this point. Does he know that his offense has an element that meets the Castleman definition of physical force in the misdemeanor crime of domestic violence? But if a batterer is arrested in a domestic violence situation for using force against the spouse or significant other, why wouldn't that be enough to conclude that he knows that he has been convicted of a crime of domestic violence? I'm still, I'm not getting an answer to the question of what more does the government have to show? The government has to include that legal, that one extra aspect. If I may finish, if I just give a brief answer to that. And when you're done, I have a follow up question, if you don't mind. Absolutely, if the court allows. What more the government has to show is that, that he understands the conviction falls within this category. It may be a absolutely necessary category, but this category is domestic violence. So what category are you talking about besides domestic violence? The category there being because that category is defined by the elements of the offense and not simply that the facts of the offense were called a misdemeanor domestic battery. Most misdemeanor domestic batteries as a matter of factual matter will qualify. But the question is still a legal question, not a purely factual question. Well, it sure sounds to me like you're arguing you have to know that he's a prohibited person. We don't want to take it that far. We know that he makes it clear that he doesn't and I will not deny that knowing that an offense qualifies as a misdemeanor crime of domestic violence is often a messy question. But again, this is this is exactly what he's telling us you have to fall. You have to know that your offense, not that you just committed in colloquial or lay terms in misdemeanor domestic battery, but that offense qualifies as a matter of law because misdemeanor domestic violence is a legal term of art. Doesn't doesn't Kaplan tell us that the misdemeanor crime of domestic violence is when we're talking about, you know, violence, we're talking about the common law definition and any touch qualifies. I mean, doesn't Kaplan tell us that? Why? Why wouldn't Kaplan be enough? I see I see that that point there and that Kasselman defines as common law de minimis touching, but to know that my offense and just presume for a second, it was something other a different type of battery or assault offense that you know, Kasselman was also talked about to know that the elements of that offense involved a de minimis touching. So putting those two pieces of the puzzle together is how you would know your offense qualifies as a misdemeanor crime of domestic violence. Otherwise, all you know, are the facts of your offense. And here, that's why even in the record, it is somewhat significant that Mr. Johnson pled down because he's pleading down and we don't know that he's agreeing to the facts of the offense, or he's pleading down because he's not wanting to agree to certain elements of those initial charges of violence. So he, he needs to common law de minimis touching or otherwise, to fall within this category. Otherwise, he is lacking that that legal component. And, you know, just picking up on my last point, as I see my time has expired, is that it may seem like we're threading a needle, but it's the same needle that the Supreme Court did acknowledge and reheat and understood that it's how Congress has chosen to define this term that makes it difficult in order to put people on notice. And I'll cede the remainder of my time for rebuttal. Thank you. Thank you. May it please the Court, Jennifer Karinas for the United States. The Supreme Court's decision in Rehase does not require that Johnson's that Johnson had been convicted of an offense that constituted a misdemeanor crime of domestic violence, a fact he has not challenged until today, and that he knew that he had been convicted of such an offense at the time that he possessed a firearm. That is all Rehase requires. Johnson had to know that of his prohibited status, and to paraphrase this Court's decision in Reed, because the record establishes that Johnson knew his status as a public reputation of his trial. The second point is that the indictment doesn't, although the indictment doesn't allege that Johnson knew his status, it sufficiently states an offense against the United States because it tracks the statutory language of 922G9, and nothing in Rehase changed that. And I think that this Court's decision in Moore is binding on this Court and settles this issue, so I recited it in our 28J letter, so I'm not going to spend a lot of time on that unless the Court has questions. I want to turn right away to the central point here. Now, in his brief, Johnson did in fact say he had to know that he was prohibited from having a firearm, and said that that was evidence that he didn't know his status. But we're conflating two things here. Knowledge of So if we were to go with the rule that Johnson is advocating, no one would ever be convicted under 922G9 because no one in state court is going to say, I know my domestic battery equals this legal definition of a misdemeanor crime of domestic violence. They're just two completely separate inquiries. Johnson knew he was convicted of And we don't need to come up with hypotheticals to understand this. There are other categories of prohibited people under 922G. For example, 922G3. Someone is prohibited if they're an unlawful user of or addicted to any controlled substance as defined in section 102. So we don't need to show that someone convicted of using a It just needs to know that under the state court statute of conviction, that he or she had been convicted of that offense. And separately, if it's challenged, then we can prove, we can argue that it qualifies. And that's where the categorical approach comes in. This is Beverly Martin. You know, it seems to me, in this case, they did challenge it. I mean, when Judge Cook was imposing sentence, she acknowledged that, you know, quote, they can genuinely say they didn't know their possession of the firearm was unlawful. So it looks like to me that the government did have an opportunity to respond to that. And of course, this is all pre-rehab, but I think your argument is weak in that regard, that the government didn't have notice that this was an issue. Well, Your Honor, I just want to, on that point, that was something that was discussed in the context of mitigation, basically saying, I'm going to give you a light sentence because you genuinely didn't know. What didn't he know? That you weren't allowed to have a firearm. That's not the status that's required under rehab. The status that's required under rehab is knowing that you have been convicted of an offense that qualifies as a misdemeanor crime and domestic violence. That's it. Not that you weren't allowed to have a firearm. He has never said, I didn't know that I was convicted of Florida domestic battery. He's never argued that. That's the status that we have to prove because under Castleman, that satisfies G9. So that comment, it was not made during his stipulated bench trial. It was made during sentencing in advocating for mitigation. So it has no bearing on his guilt in this case or on whether or not there was an error at his trial. Go ahead. Sorry, Your Honor. So you have noticed, I mean, I just, you know, Rehoff, to me, says very clearly that, you know, Congress intended to require the government to establish that the defendant knew he violated the material elements of 923G. And it talks about, you know, knowledge of his status under that statute. And here we've got a defendant that was never, that apparently didn't have knowledge, is never notified or never admonished about how he would not be allowed to possess a firearm because that wasn't one of the elements under Florida law. Your Honor, sorry, go ahead. I'm not, I'm just not persuaded by your, by your argument. So just in fairness to let you know that. I understand, Your Honor. And again, I would just emphasize that Rehoff was pretty clear that the status they're talking about is that you're a prohibited person, not that you're prohibited from having a firearm. And we know this from, if we look at Rehoff at 2198, there's been a discussion here where the government had argued ignorance of the law is no excuse. And Rehoff distinguished and said, no, no, that, that applies where you have the represent mental state, but you don't know of the existence of a statute prescribing your conduct. Well, here, that would be the statute prescribing the possession of a gun. In contrast, it doesn't apply where you have a mistaken oppression concerning the legal effect of some collateral matter. In Rehoff, it was being unlawfully in the United States. Here, it's being someone who's committed a domestic battery that qualifies under Castleman. And so I think that Rehoff provides us support in that regard, Your Honor. And again, the status, and if we look at in particular, the Triggs case, that's a case that Mr. Johnson himself put before this court in his response to our 28-J letter. Counsel, could I ask you to respond to something from Rehoff? Rehoff talks about how the maximum of ignorance of the law is no excuse. It does not normally apply where a defendant has a mistaken oppression concerning the legal effect of some collateral matter. And that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense. Can you just explain how that applies to your theory? I can explain that in the context of Triggs because that's a good contrast. So Triggs, the court said, well, that doesn't – that ignorance of the law doesn't apply where you honestly don't know all of the facts that would put you in this prohibited category. So Triggs, unlike Johnson, he was not represented at his state court trial where he was charged with battery. He wasn't even charged with domestic battery. He was just charged with battery. There was nothing in the record to show that he knew he had been convicted of that he was pleading guilty to a misdemeanor crime of domestic violence, that is, a common-law battery against someone with whom he had a domestic relationship. So there, he can plausibly say, I didn't know, just as a defendant in Rehoff could say, I didn't know, or the examples that the court gave where someone's brought here as a child and says, I didn't know I was here unlawfully. That's very different than saying – he can't say plausibly, I didn't know that I had committed a domestic battery in 2010 because he stipulated I committed it in the domestic battery. And the TSI, to which he didn't object, says very clearly he strangled, punched, and threatened to pistol-whip his wife, and a gun was found under the mattress. There's no ambiguity there. He absolutely knew that he had battered his wife. So it's very different than the types of cases that Rehoff posits or that Triggs exemplifies where you can honestly and plausibly say, I didn't know. And then the government can be put to its proof. If we were put to our proof here, what would we do? We would do exactly the same thing but just say, okay, he committed this crime, he admits he committed this crime, and he knew he committed this crime. So in this kind of situation, the two questions really are the same. And in a lot of other cases, they're not going to be. And I want to, if I can go back to the unlawful user of a controlled substance, I didn't cite this in the 28-J, but there's a Colorado case that escapes me right now that's really helpful because it talks about this person really was ignorant of his status. He was someone who had used marijuana in a state where it was legal and then was arrested in a state where it wasn't legal and had it fined. And so there he said, well, I didn't know that I was an unlawful user or addicted to a controlled substance. And the jury also had deadlocked on the question of a false statement that turned that he was an unlawful user. So that's another example of someone who can plausibly argue, I didn't know my status. But the important thing to distinguish here is what does status mean? Status does not mean you can't have a gun. Status does not mean you knew in 2010 when you were convicted of domestic battery that you also met, did this additional step of meeting 921A33's definition. That's our job if it's challenged. Here it wasn't. Your job is more than that. Just reading again from Rahoff. This is Beverly Martin. You probably recognize me by now. It says the government must prove both that the defendant knew that he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. And there's just no proof of that in this record. I mean, yes, he knew he had been convicted of this crime, but he didn't understand that that was a consequence of having that misdemeanor conviction. Again, Your Honor, I would urge the court to look at Rahoff at 2198. The consequence of belonging to that category is not the status that Rahoff requires. Rahoff requires that you're in this status, not that you know you're not permitted to have a firearm. And what I was getting at before in the Triggs case, Triggs cites to Mays, which is another Seventh Circuit case, where it said very clearly, and it actually discusses this really nicely, it says very clearly, Rahoff does not require that the defendant know he was not permitted to have a firearm. Otherwise, we would be superimposing willfulness requirements, which the court did not do. It just said you have to know that you're in this status. What is the status of a prohibited person? The knowledge requirement is that you occupy, that you have this status, not the consequence of this status. Those are descriptive words. You have to know that you're in the category of people who are prohibited. So that's a descriptor. Who are those people in that category of people who are prohibited? Domestic violence misdemeanors, users of unlawful drugs, felons, et cetera. But you don't have to know the consequence of that. That is a step farther than REHAPE requires. And I don't know if the court has any questions on the indictment issue, whether or not it states an offense. I would just point out that in Mr. Johnson's reply, he argues that the indictment doesn't even charge him with an offense. And I would submit that for the reasons we discussed in our brief, the cases to which he cites don't apply here because those are cases where someone pled guilty to a crime that wasn't even in the indictment. I think it was he pled guilty to conspiracy, but he was actually charged with possession. Or where someone is charged with a crime that an intervening Supreme Court case says, well, that's no longer a crime. That's the kind of case where you can say that the indictment doesn't state an offense. But here, the indictment absolutely states an offense against the United States, that is, being in possession of a firearm while occupying the status of a domestic violence misdemeanor. And if the court has no further questions, I thank you for your time and ask you to affirm. Thank you. Mr. Bashir? Yes, Your Honor. Just three brief points. One, kicking back up, I'm glad my opponent actually brought up the unlawful user because I think that illustrates the point we're trying to make exactly, which is there's a distinction between knowing that somebody that I use or smoke marijuana and knowing that I'm an unlawful user. That is a legal term of art, requires some knowledge of the law. There is a distinction between knowing that I've committed an offense and knowing that that offense meets a unique legal term of art, which is misdemeanor crime of domestic violence. There's simply nothing in this record to indicate that Mr. Johnson knew anything other than he pled guilty to his offense. The second point, and this is crucial. But he pled guilty in the context of a domestic assault. That's where I'm having a hard time following your argument, counsel. I grant that because it seems as if the fact that the label of the offense makes it axiomatic that it would fall within a misdemeanor crime of domestic violence, and Castleman suggests that lots of offenses do. The problem there and why that knowledge— Congress's concern here was to protect women from further violence, including violence by death from firearms. Absolutely, Judge Tallman. And I would actually—I would encourage, because we're pointing a lot to Raheith. The government's argument is essentially reading Justice Alito's dissent, which was rejected by the Raheith majority because Justice Alito made the exact point that's being made here. Congress does have that goal, and it's an important goal. But, counsel, I'm sorry to interrupt. This is Robin Rosendahl. But as a matter of practical application, I mean, the way that you're suggesting— maybe I'm misunderstanding, but it sounds like the way you're suggesting this needs to be applied, that you're saying that Raheith says it needs to be applied, is that the defendant must be able to conduct the categorical analysis himself and understand that he qualifies under the categorical analysis. Is that what you're saying? No, Your Honor, and I want to be very clear about that because I was fearful that that might come across. No, there's another distinction to be made here. In its simplest terms, what the government has to prove is knowledge of status, that my prior conviction qualifies. There are multiple ways to do that, and knowledge is often proof of circumstantial evidence. In the run-of-the-mill case, like Judge Tolman is saying, or the government is even suggesting, they would put forward these facts and argue that you can draw an inference. The difference here is there's not a defense attorney on the planet worth his weight in salt that would not argue under Raheith that actually Mr. Johnson did not know the collateral consequence of his conviction. He pled to misdemeanor battery, but that placed him within a category under federal law. And, in fact, our records suggest that Mr. Johnson had no idea that his offense had any collateral legal consequences in the run-of-the-mill case. Let me say that on this record, you know, this is a really appealing argument. The problem is if we apply it generally, I mean, just from the standpoint of fairness, it's an appealing argument, but if we apply that generally, I don't see how what you're saying would not mean that the government would have to demonstrate that the person knew that he or she qualified under the definition of whatever the status was, which then would require him or her to know that categorically he or she fit into that category. Do you know what I mean? I mean, it's a practical matter. Go ahead. It's okay. Oh, sure. If I can give a legal and a practical answer to your question, because this, and I think this was actually a big concern in Rahif, because this goes to the knowledge of the law component. As a practical matter, most cases that come before the court, there will be situations in which the government can argue inferences, and that's where it's getting a little bit conflated, but in most cases, the Reid decision from this court points out... I mean, that's the inference you'd be arguing. The inference, I think, maybe we just remove the word categorically to allay your concerns, because all you need to show is that you know that it's a misdemeanor crime of domestic violence, so you could just imagine a situation where somebody... I'm sorry, the way that I understood you to argue it today was to understand that you qualified as misdemeanant for a crime of domestic violence. You would need to know that whatever you were convicted of qualified as a crime of domestic violence categorically, right? I mean, how else could you know that if you didn't know that? I mean, that sounds weird. I can give another example of where someone would be put on notice. A simple example is if someone, suppose Mr. Johnson went to go purchase a firearm and filled out the federal form, he would have gotten rejected because he had a prior conviction, and then he would have just been told, your offense qualifies. That doesn't require him to know the categorical approach, but he's on notice. So there are other ways. The reason that we're emphasizing the categorical approach here is because of the record that we have, and as we've pointed out, on our record, none of those extra facts are there to show his knowledge of his status, that his offense qualifies. Another situation I can think of, and this is from Rahif, and when they're referencing Gomez-Perez, unfortunately people that tend to have misdemeanor crimes of domestic violence often have multiple run-ins with the law. So they could have other situations of where they've been in federal court and are told or just flat-out told this offense qualifies. That doesn't require knowledge of the categorical approach, but puts someone on notice. If Mr. Rahif, someone had just told him, you are in the country illegally, that would put him on notice. That's the important part, the notice aspect. It's not, to really, to yours and Judge Tolman's point, I don't mean to suggest that now trials will turn into categorical exercises, but when Congress has made such a complex definition, and I would urge the court to read that Triggs decision because Triggs remains on this exact point. There's genuine questions about whether someone knows, if I could just finish this last point, there's genuine questions about whether someone, not just that they know that they've committed an offense or that they've committed a battery, but that that battery then falls within a federally created definition. There are multiple ways to do it. None of them are present in this case, so we would ask the court to read that. But, counsel, I just don't understand. If he beats, kicks, and pistol whips his wife and he gets convicted of an offense arising from that, I still don't understand what more the government has to prove. How could he not know that that was a domestic violence offense? Well, two things to that. One, because he pled down, he pled to touching or striking. The real question, then, is does he know touching or striking meets the Castleman definition? That's the question because I could know a lot of my facts, but for a lot of reasons, and the Supreme Court has just over and over emphasized this when Congress has defied these terms. They did it in Decomps. They did it in Stoeckling most recently. They've done it again in Raheith. They've pointed out there's a difference, and I'm sure it's caused the consternation of appellate courts across the country that Congress, there are anomalies, there are offenses that seem extremely violent that don't qualify as a misdemeanor crime of domestic violence. To take the government's position renders Raheith meaningless because all you would need to know is that you've committed an offense and the government can prove that it qualifies one way or another. That was flatly rejected. What actually needs to happen is the government needs to prove that you knew you were in the country unlawfully, that you know you're an unlawful user, you know that you have a misdemeanor crime of domestic violence. Otherwise, Raheith would have lost because Raheith knew the attendant facts that made him unlawful in the country. What he didn't know was that collateral legal effect. He didn't know that his visa was no longer valid. Same thing here. I know, or Mr. Johnson knows, he's committed a battery. Does he know that that battery actually has a special label in the federal court? He could know it categorically. He could know it if he's told. He could be put on notice otherwise. That notice is completely lacking. But the category is that it arose from a domestic battery. So, I mean, what more? I keep asking the same question. What more does the government have to show? If he knows that he's a domestic batterer. In most cases, the government would have to show that he has a notice that that, just the fact that he's a domestic batterer, also means that he has some collateral effect in federal court. But that's what the Supreme Court rejected. The Supreme Court said, no, you don't have to understand the collateral consequences. All you need to know is that you were convicted of a crime involving domestic violence. And that's exactly what we have here. Well, respectfully, Judge Tolman, in that position, talking about knowledge of the law, the Supreme Court said you did have to prove if the element of the offense is defined by legal terms. You do have to prove that collateral legal consequence. That's where the discussion of the maxim of the law. So, that, it's not enough to just show that I have committed the offense. But the collateral consequence is that he can't possess a firearm. And I thought you said at the beginning of your argument that you weren't reading Raheem that far. Well, the collateral consequence here is my, it falls within this federally created category of misdemeanor crime of domestic violence.  There is no, we can talk about it colloquially, but G9 has created this special category in and of itself. And, you know, we have example after example of offenses that sound, this is the courts Palomino Garcia decision, that sound like they're very violent. They sound like they qualify as crimes of violence or serious drug offenses. But they turn out not to. So, for the government to say that all you need to know is your offense and we get to prove whether it qualifies, that renders Raheem on its head. This, the same discussion we're having is what, the concern that you're raising, and I don't deny it, is the concern Justice Alito is raising. But the ire is that the dual interest that Congress is trying to emphasize. As Congress made it clear, and maybe if I can conclude on this kind of global point, I might bring it home. If, just suppose Congress now created 922 G10 of anybody who, and created a new category, a crime of moral turpitude, defined in a certain way, that I committed bank fraud or something would simply not be enough. I would have to know it qualifies as a crime of moral turpitude. There's an extra leap. And that's not a factual question alone. That's the collateral legal question. So, that's the focus here. And Triggs recognized this. Triggs reversed on this very basis that there is complexity. And we're talking here on our record about a reasonable probability of a different result. There is a strong...  Oh, I'm sorry, Your Honor. It's always difficult on the phone. My wife would say the same thing. I don't get off the phone very easily. But I appreciate it, nonetheless.  Thank you. Thank you, Joplin. Okay, so we have that case. Yes. And it was well argued, and I appreciate it.